UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
JESSICA DE LA ROSA,

                                 Plaintiff,

              -against-

127-129 ORCHARD ST. LLC and FOURTHGEN,
LLC,

                               Defendants.
-------------------------------------------------------------x

Civil Case No: 1:26-cv-00626

**COMPLAINT**

**JURY TRIAL REQUESTED**

## COMPLAINT

      Plaintiff, Jessica De La Rosa ("Plaintiff"), by and through her counsel, Hanski Partners

LLC, hereby files this Complaint against 127-129 Orchard St. LLC ("Landlord Defendant") and

Fourthgen, LLC ("Tenant Defendant" and collectively with Landlord Defendant, "Defendants"),

and alleges upon information and belief as follows:

## INTRODUCTION

1. Plaintiff is an individual with a disability who requires a wheelchair for mobility.

2. Defendants own, operate, and lease a place of public accommodation, the restaurant
located at 127 Orchard St, New York, NY 10002 known as Russ & Daughters Café ("Russ &
Daughters").

3. Due to Defendants' discriminatory actions, Russ & Daughters is not readily
accessible to and usable by individuals with disabilities that use wheelchairs ("accessible").

4. Russ & Daughters is not accessible because Defendants created and maintain Russ &
Daughters with architectural elements that function as barriers to wheelchair access
("architectural barriers").

5.   Defendants denied Plaintiff full and equal enjoyment of Russ & Daughters' goods, services, facilities, privileges, advantages, and accommodations ("equivalent access") based on disability through their creation and maintenance of architectural barriers at Russ & Daughters.

6.   Defendants denied Plaintiff equivalent access to Russ & Daughters due to the architectural barriers at Russ & Daughters Plaintiff personally encountered.

7.   Plaintiff was harmed by Defendants when she personally encountered architectural barriers at Russ & Daughters.

8.   Plaintiff encountered the architectural barriers when she dined at Russ & Daughters in June 2025.

9.   Plaintiff enjoyed Russ & Daughters' food.

10. Plaintiff did not enjoy encountering architectural barriers that denied her equivalent access to Russ & Daughters.

11. Defendants discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations; the New York Human Rights Law ("State HRL"), Article 15 of the New York Executive Law; the New York Civil Rights Law ("CRL"), § 40 *et seq.;* and the New York City Human Rights Law ("City HRL"), Title 8 of the Administrative Code of the City of New York.

12. Plaintiff files this Complaint against Defendants so they will cease discriminating against her in violation of the ADA, State HRL, CRL, and City HRL (collectively, the "Human Rights Laws").

13. Plaintiff seeks equitable, injunctive, and declaratory relief together with attorneys' fees, costs, and expenses pursuant to the Human Rights Laws.

14. Plaintiff also seeks civil penalties from Defendants pursuant to the CRL, and monetary damages from Defendants pursuant to the State HRL and the City HRL.

## JURISDICTION & VENUE

15. This Court is vested with jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and §1343 because this is an action for declaratory and injunctive relief pursuant to the ADA.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the events giving rise to this action occurred in the State of New York, County of New York; specifically, at the real property and building thereon with the street address of 127 Orchard St, New York, NY 10002 ("127 Orchard").

17. This Court has supplemental jurisdiction over Plaintiff's State HRL and City HRL claims pursuant to 28 U.S.C. § 1367(a) as they are related to her claims arising under the ADA.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *The Parties and the Place*

18. Plaintiff is a resident of the State and City of New York.

19. Plaintiff suffers from a physical condition that renders her unable to walk using her musculoskeletal system, and which restricts Plaintiff's body motion range and movement.

20. Unable to walk on her own, Plaintiff uses a wheelchair to move about.

21. Landlord Defendant, a Domestic Limited Liability Company, is a private (non-governmental) entity.

22. Landlord Defendant conducts business within the State of New York, including at 127 Orchard.

23. Landlord Defendant owns and operates 127 Orchard.

24. Landlord Defendant leases space within 127 Orchard to Tenant Defendant for use and occupancy as a restaurant.

25. The space Landlord Defendant leases to Tenant Defendant is located on the ground floor of 127 Orchard.

26. Tenant Defendant, a Domestic Limited Liability Company, is a private (non-governmental) entity.

27. Tenant Defendant conducts business within the State of New York, including at 127 Orchard.

28. Tenant Defendant leases space at 127 Orchard from Landlord Defendant for use and occupancy as a restaurant.

29. Tenant Defendant owns and operates Russ & Daughters, a restaurant that specializes in Jewish cuisine, in the space it leases from Landlord Defendant at 127 Orchard.

***Plaintiff's Russ & Daughters Experience***

30. Russ & Daughters is in Manhattan's Lower East Side neighborhood.

31. Plaintiff lives approximately thirty minutes wheelchair rolling distance from Russ & Daughters.

32. Plaintiff goes to the Lower East Side area in which Russ & Daughters over 12 times a year.

33. Plaintiff goes to the Lower East Side for social activities and to enjoy its restaurants.

34. When Plaintiff goes to the Lower East Side she patronizes restaurants and other spaces that are accessible to her as a wheelchair user.

35. Jewish food is among the cuisines that Plaintiff enjoys.

***Past Injury –Direct Injury from Plaintiff's Personal Encounter with Architectural Barriers***

36. In June 2025 Plaintiff decided to dine at Russ & Daughters as she likes Jewish food.

37. When Plaintiff arrived at Russ & Daughters she personally encountered architectural barriers at Russ & Daughters.

38. The architectural barriers Plaintiff personally encountered included an inaccessible exterior route into Russ & Daughters and an inaccessible entrance.

39. For example, upon arriving at Russ & Daughters public entrance on Orchard Street, Plaintiff encountered a public entrance that was not accessible to her as a wheelchair user.



Russ & Daughters' Inaccessible Public Entrance

40. The public entrance was not accessible to Plaintiff as the ground surface at the doorway had a slope greater than 5% and was without the required top and bottom landings.

41. The public entrance was also not accessible to Plaintiff as the ground surface within the doorway maneuvering clearance area was not level and clear as the ground surface had a slope greater than 2.08%.

42. Once inside Russ & Daughters, Plaintiff encountered more architectural barriers that denied her equivalent access to Russ & Daughters.

43. These interior architectural barriers included a change in level (step) in the floor surface significantly greater than .5 inches which was not treated with an accessible ramp.

44. The change in level (step) blocked Plaintiff from accessing Russ & Daughters' dining room and restrooms due to her use of a wheelchair for mobility.

45. Plaintiff then learned if she wanted to dine at Russ & Daughters she would have to go back outside the Orchard Street public entrance and travel 420 feet (a distance greater than one and a half city blocks[1]) to reach Russ & Daughters' back door on Allen Street.

46. As Plaintiff desired to dine at Russ & Daughters she swiveled around in her wheelchair and went out the inaccessible public entrance she had just struggled to enter through.

47. Plaintiff then wheeled 160 feet south along Orchard Street to Delancey Street.

48. Once on Delancey Street, Plaintiff went 100 feet west to Allen Street.

49. Then on the corner of Allen and Delancey Street, Plaintiff turned right to roll north another 160 feet until she reached Russ & Daughters' back door.

50. Upon reaching the back door, Plaintiff was dismayed with what she encountered: a doorway that was not accessible to her as a wheelchair user.

51. The back door was not accessible to Plaintiff as the ground surface at the doorway had a slope greater than 5%.

52. In addition to lacking the required top and bottom landings, the sloped ground surface within the doorway maneuvering clearance area was not level and clear as the ground surface has a slope greater than 2.08%.

---

[1] "The standard block in Manhattan is about 264 by 900 feet". Wikipedia, City block, https://en.wikipedia.org/wiki/City_block (last visited Jan. 23, 2026).



Russ & Daughters' Inaccessible Back Door

53. The architectural barriers Plaintiff encountered made Russ & Daughters' back door inaccessible to her as a wheelchair user.

54. The architectural barriers Plaintiff encountered in June 2025 made Russ & Daughters inaccessible to her as a wheelchair user, denying her equivalent access based on disability.

55. Defendants created and maintain the architectural barriers at Russ & Daughters that make inaccessible to Plaintiff.

56. Defendants denied Plaintiff equivalent access to Russ & Daughters through the architectural barriers they created and maintain at Russ & Daughters.

57. Plaintiff suffered a direct injury from Defendants' conduct when she personally encountered architectural barriers at Russ & Daughters.

***Past Injury – Plaintiff's Past Detterent Injury Due to Architectural Barriers***

58. Since Plaintiff attempted to dine at Russ & Daughters in June 2025 Plaintiff has been to Lower East Side where Russ & Daughters is located.

59. On at least one occasion since Plaintiff's June 2025 visit, Plaintiff would have liked to dine at Russ & Daughters.

60. Although Plaintiff desired to dine at Russ & Daughters, Plaintiff was deterred from patronizing Russ & Daughters.

61. Plaintiff was deterred as the architectural barriers she personally encountered at Russ & Daughters would again deny her equivalent access to Russ & Daughters.

***Ongoing Injury – Plaintiff's Continuing Detterant Injury Due to Architectural Barriers***

62. Plaintiff continues to desire to dine at Russ & Daughters.

63. Russ & Daughters is conveniently located near Plaintiff's home – approximately thirty minutes wheelchair rolling distance from Plaintiff's home.

64. Russ & Daughters is also conveniently located in an area that Plaintiff frequents over 12 times a year, Manhattan Lower East Side neighborhood.

65. Plaintiff goes to the Lower East Side area for social activities.

66. Plaintiff patronizes restaurants and other spaces that are accessible to her in Lower East Side.

67. Plaintiff enjoys Jewish food, the cuisine served at Russ & Daughters.

68. Plaintiff desires the opportunity to dine at Russ & Daughters, without being denied equivalent access.

69. Due to the architectural barriers Defendants maintain at Russ & Daughters, Plaintiff continues to be deterred from patronizing Russ & Daughters.

70. But for the architectural barriers at Russ & Daughters, Plaintiff would go to Russ & Daughters to dine.

71. After these barriers are removed, Plaintiff will patronize Russ & Daughters.

72. By maintaining architectural barriers at Russ & Daughters, Defendants deny Plaintiff equivalent access to Russ & Daughters due to disability and continue to discriminate against

Plaintiff in violation of the Human Rights Laws.

73. Plaintiff continues to be deterred from dining at Russ & Daughters because she is personally aware that the architectural barriers at Russ & Daughters deny her the opportunity to have equivalent access to Russ & Daughters.

74. Defendants continue to maintain the architectural barriers at Russ & Daughters, those that Plaintiff personally encountered, and those that Plaintiff learned of after she visited Russ & Daughters.

75. Defendants cause Plaintiff to suffer an ongoing injury as they continue to deter Plaintiff from visiting Russ & Daughters by maintaining these architectural barriers.

***Alterations were performed to Buildout Russ & Daughters at 127 Orchard***

76. 127 Orchard was constructed prior to January 26, 1993.

77. At various times after January 26, 1992, the space Russ & Daughters occupies and uses at 127 Orchard was remodeled, renovated, and reconstructed in a manner that affected or could have affected the way the space, or part of the space, is used (i.e., "Altered").

78. For example, in 2013 and 2014, to create Russ & Daughters the space it occupies at 127 Orchard was Altered.

79. The remodeling, renovation, and reconstruction work included the demolition of the then existing commercial space and changing it for use as a restaurant.

80. The reconstruction work included (i) interior demolition, (ii) construction of interior partitions (walls) and spaces; (iii) installation of flooring; (iv) changes to the layout of the space; (v) construction of restrooms; (vi) installation of plumbing fixtures; (vii) installation of restaurant fixtures and dining surfaces, including a bar with a counter for drinking and dining; (viii) installation of a new storefront containing the public entrance on Orchard Street, and (ix)

installation of a new storefront containing the back entrance on Allen Street.

81. However, Russ & Daughters' space was Altered without providing for the minimum required physical accessibility necessary for disabled individuals that use wheelchairs to have equivalent access to Russ & Daughters.

82. Therefore, although Altered, Russ & Daughters' physical space is not accessible.

83. Russ & Daughters is a place of public accommodation as defined by the ADA, State HRL, CRL, and City HRL, because it is a restaurant.

84. As a place of public accommodation, Russ & Daughters is required to be accessible pursuant to the ADA, State HRL, and City HRL as a non-accessible place of public accommodation does not provide equivalent access to persons such as Plaintiff, a disabled individual that uses a wheelchair.

85. To comply with the ADA, CRL, State HRL, and City HRL, Landlord Defendant, the property owner and lessor of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Russ & Daughters.

86. To comply with the ADA, CRL, State HRL, and City HRL, Tenant Defendant, the lessee and owner/operator of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Russ & Daughters.

87. The ADA, CRL, State HRL, and City HRL prohibits the property owner, lessor, and lessee of a place of public accommodation, as well as the operator and owner of the place of public accommodation (each a "public accommodation"[2]) from discriminating based on disability with respect to the place of public accommodation. ADA, 42 U.S.C. § 12181 and 28 C.F.R. § 36.104; State HRL, Executive Law § 296(2)(a); N.Y. Civil Rights Law §§ 40 and 40-c,

---

[2] Also known as a "covered entity" under the City HRL.

and the City HRL, Administrative Code § 8-102.

88. Each Defendant is a public accommodation: Landlord Defendant is a public accommodation as it owns and leases the physical space within 127 Orchard in which Russ & Daughters is located; Tenant Defendant is a public accommodation as it owns and operates Russ & Daughters and leases the space in which Russ & Daughters is located from Landlord Defendant.

89. The ADA, State HRL, and City HRL impose joint and several liability on the owner, lessor, and lessee of the location in which a place of public accommodation is located, as well as upon the operator and owner of the place of public accommodation.

90. Each Defendant is vicariously liable for the discriminatory acts and omissions of their employees and agents.

91. Pursuant to the Human Rights Laws, Russ & Daughters, an Altered place of public accommodation is required to be readily accessible to and usable by disabled individuals that use wheelchairs.

92. Defendants' failure to comply with the ADA, State HRL, and City HRL infringes upon Plaintiff's rights to be free from discrimination based on disability.

93. Defendants offer ambulatory individuals the opportunity to dine within Russ & Daughters but deny Plaintiff this opportunity based on disability.

94. By denying Plaintiff the opportunity to enter Russ & Daughters' interior through their maintenance of architectural barriers, Defendants unlawfully discriminate against Plaintiff based on disability.

95. To the extent Defendants assert that they do not deny Plaintiff the opportunity to enter Russ & Daughters as they can assist Plaintiff in overcoming the architectural barriers so she may

enter Russ & Daughters, Defendants' demand that Plaintiff seek assistance to enter Russ & Daughters, instead of providing independent access to her as a wheelchair user, is unlawful discrimination in violation of the Human Rights Laws.

96. Defendants provide ambulatory patrons the opportunity to independently enter Russ & Daughters but deny Plaintiff this opportunity based on disability.

97. Any demand by Defendants that Plaintiff request assistance to enter Russ & Daughters instead of providing a means of independent access to Russ & Daughters is unlawful discrimination against Plaintiff based on disability.

98. Plaintiff intends to visit Russ & Daughters and dine there again after the architectural barriers are removed and Russ & Daughters is made readily accessible and usable as required by the ADA, State HRL, and City HRL.

99. Architectural barriers which Plaintiff encountered include, but are not limited to, the following violations of the ADA Standards[3] and the NYC Standards[4] (together the "Accessibility Standards"):

---

[3] "ADA Standards" means to (i) the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A (the "1991 ADA Standards" or "1991 ADA"); and (ii) the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (the "2010 ADA Standards" or "2010 ADA").
[4] NYC Standards" means (i) the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 et seq. (the "1968 BC"), inclusive of the technical standard for accessibility referenced in the 1968 BC, ANSI A117.1-1986 as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"); (ii) the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 et seq. and Appendix E (the "2008 BC"), inclusive of the technical standard for accessibility referenced in the 2008 BC, ICC A117.1-2003 (the "2008 Ref Std"); (iii) the accessibility provisions of the 2014 New York City Building Code, N.Y.C. Admin. Code § 28-1101 et seq. and Appendix E (the "2014 BC"), inclusive of the technical standard for accessibility referenced in the 2014 BC, ICC A117.1-2009 (the "2014/2022 Ref Std); and (iv) the accessibility provisions of the 2022 New York City Building Code, N.Y.C. Admin. Code § 28-1101 et seq. and Appendix E (the "2022 BC"), inclusive of the technical standard for accessibility referenced in the 2022 BC, 2014/2022 Ref Std.

*Exterior Route & Public Entrance (Orchard Street)*

A.  An accessible route is not provided from the public sidewalk to Russ & Daughters' public entrance.
*Defendants fail to provide that at least one accessible route shall be provided within the site from public sidewalks to the accessible entrance served by the sidewalk. 1991 ADA § 4.1.2(1); 2010 ADA § 206.2.1; 1968 BC§ 27-292.5(b); 2008 BC § 1104.1; 2014 BC § 1104.1; and 2022 BC § 1104.1.*

B.  The walking surface from the public sidewalk adjoining 127 Orchard to Russ & Daughters' public entrance has a cross slope greater than 1:50.
*Defendants fail to provide that walking surfaces which are part of an accessible route have cross slopes no greater than 1:50. 1991 ADA § 4.3.7; 1968 Ref Std § 4.3.7.*

C.  The walking surface from the public sidewalk adjoining 127 Orchard to Russ & Daughters' public entrance has a cross slope greater than 1:48.
*Defendants fail to provide that walking surfaces which are part of an accessible route have cross slopes no greater than 1:48. 2010 ADA § 403.3; 2008 Ref Std § 403.3; and 2014/2022 Ref Std § 403.3.*

D.  The walking surface from the public sidewalk adjoining 127 Orchard to Russ & Daughters' public entrance has a running slope greater than 1:20 but does not comply with the minimum requirements for ramps.
*Defendants fail to provide that walking surfaces with a running slope greater than 1:20 that are part accessible route comply with the requirements for ramps. 1991 ADA § 4.3.7; and 1968 Ref Std § 4.3.7.*

E.  The walking surface from the public sidewalk adjoining 127 Orchard to Russ & Daughters' public entrance has a running slope greater than 1:20
*Defendants fail to provide that walking surfaces which are part of an accessible route have running slopes no greater than 1:20. 2010 ADA § 403.3; 2008 Ref Std § 403.3; and 2014/2022 Ref Std § 403.3.*

F.  Russ & Daughters' public entrance is not accessible.
*Defendants fail to provide that at least 50% of the public entrances are accessible.  1991 ADA § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of the public entrances are accessible.  2010 ADA § 206.4.1.*
*Defendants fail to provide that primary entrances/public entrances are accessible. 1968 BC § 27-292.5(a).2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § BC 1105.1.*

G.  There is no level and clear maneuvering clearance at the exterior side of the entrance doorway as the ground surface within the area required for maneuvering clearance has slopes (cross and running) greater than 1:48.
*Defendants fail to provide a level and clear ground surface area at the pull side of the entrance door of 60 inches deep (perpendicular to the doorway) and 18 inches wide (beyond the latch side*

*of the door). 1991 ADA § 4.13.6 and Fig. 25; 2010 ADA § 404.2.4.1; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

H.  The area required for maneuvering clearance at the exterior side of the entrance doorway is not level.
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain any slope that exceeds 1:50. 1991 ADA § 4.3.7*
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain any slope that exceeds 1:48. 2010 ADA § 404.2.4.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3.5; and 2014/2022 Ref Std § 404.2.3.1*

I.  The area required for maneuvering clearance at the exterior side of the entrance doorway is not clear.
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain obstructions or barriers.  1991 ADA § 4.13.6; 2010 ADA § 404.2.4.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3.5; and 2014/2022 Ref Std § 404.2.3.1.*

J.  There is a change in level greater than ½ inch high between the walking surface at the exterior of the public entrance and the threshold of the public entrance.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp, elevator, or platform lift. 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. 2010 ADA § 303.4; 2008 Ref Std § 303.3; 2014 BC § 1003.5; and 2014/2022 Ref Std § 303.4.*

K.  The route provided to navigate the change in level at the entrance doorway has a running slope greater than 1:20, but does not comply with any of the requirements for ramps
Defendants fail to *provide a compliant ramp. to overcome the change in level at the entrance. 1991 ADA § 4.8; 2010 ADA § 405; 2008 BC §§ 1102 and 1104; 2014 BC §§ 1102, 1104; and 1003.5; and 2022 BC § 1104*

L.  The running slope of the ramp run is too steep (greater than 1:12).
*Defendants fail to provide that the ramp run does not have a running slope steeper than 1:12. 1991 ADA § 4.8.2; 2010 ADA § 405.2; 1968 Ref Std § 4.8.2; 2008 Ref Std § 405.2; and 2014/2022 Ref Std § 405.2.*

M.  The cross slope of the ramp run is not level (greater than 1:48).
*Defendants fail to provide that the ramp run does not have a cross slope greater than 1:48. 1991 ADA § 4.8.6; 2010 ADA § 405.3. 1968 Ref Std § 4.8.6; 2008 Ref Std § 405.3; and 2014/2022 Ref Std § 405.3.*

N.  The ramp does not have a top landing.
*Defendants fail to provide that the ramp has a top landing that is level, with a minimum length of 60 inches and at least as wide as the run of a compliant ramp. 1991 ADA § 4.8.4; 2010 ADA § 405.7; 1968 Ref Std § 4.8.4; 2008 Ref. Std § 405.7; and 2014/2022 Ref Std § 405.7.*

O.  There is no level and clear maneuvering clearance at the exterior side of the entrance doorway as the run of the noncompliant ramp is located within this area (i.e., the ground surface has a slope greater than 1:12).
*Defendants fail to provide a level and clear ground surface area at the pull side of the entrance door of 60 inches deep (perpendicular to the doorway) and 18 inches wide (beyond the latch side of the door). 1991 ADA § 4.13.6 and Fig. 25; 2010 ADA § 404.2.4.1; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

P.  There is no level and clear maneuvering clearance at the interior push side of the entrance doorway of a minimum 48 inches deep due to fixtures that obstruct the required area, by the hinge side of the door. *Defendants fail to provide a level and clear ground surface area at the push side of the entrance door of 48 inches deep (perpendicular to the doorway). 1991 ADA §* 4.13.6; *2010 ADA § 404.2.4.1; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

Q.  No signage identifies an accessible public entrance (if Defendants assert they provide an accessible public entrance).
*Defendants fail to display signage (marked with the International Symbol of Accessibility or otherwise) that identifies an accessible entrance. 1991 ADA §§ 4.1.2(7)(c); 4.1.3(8)(d); and 4.1.6(1)(h); 2010 ADA § 216.6; 1968 BC § 27- 292.18; 2008 BC § 1110; 2014 BC §§ 1101.3.4 and 1110; and 2022 BC §§ 1101.3.4 and 1111.1.*

R.  No directional signage at the inaccessible public entrance indicates the location of an accessible public entrance (to the extent Defendants claim they provide an accessible entrance).
*Defendants do not provide and display signage at the inaccessible public entrance (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible public entrance. 1991 ADA §§ 4.1.6(1)(h) and 4.1.3(8)(d); and 2010 ADA Standards § 216.6.*
*Defendants fail to provide directional signage at necessary locations. 1968 BC § 27-292.18(b).*
*Defendants fail to provide directional signage by the inaccessible public entrance indicating the route to the nearest accessible public entrance. 2008 BC § 1110.2; 2014 BC §§ 1101.3.3; and 1110.2; and 2022 BC §§ 1101.3.3 and 1111.2*

S.  The public entrance also functions as the public exit and is not accessible for the reasons described above.
*Defendants fail to provide that accessible spaces shall have not less than one accessible means of egress, or where more than one general means of egress is required from any accessible space, each accessible portion on the space shall be served by not less than two accessible means of egress.  2010 ADA § 207.1 (2000 IBC 1003.2.13); 2008 BC § 1007.1; 2014 BC § 1007.1; and 2022 BC § 1009*
*Defendants fail to provide that buildings shall have at least one primary entrance (exit) accessible to and usable by individuals who use wheelchairs and such entrance shall provide access to a level that makes elevators available in buildings where elevators are provided. 1968 BC § 27-357(d).*

<u>*Exterior Route & Back Entrance (Allen Street)*</u>

T.   An accessible route is not provided from the public sidewalk to Russ & Daughters' back entrance.
*Defendants fail to provide that at least one accessible route shall be provided within the site from public sidewalks to the accessible entrance served by the sidewalk. 1991 ADA § 4.1.2(1); 2010 ADA § 206.2.1; 1968 BC§ 27-292.5(b); 2008 BC § 1104.1; 2014 BC § 1104.1; and 2022 BC § 1104.1.*

U.   The walking surface from the public sidewalk adjoining Russ & Daughters' back entrance to the entrance area has a cross slope greater than 1:50.
*Defendants fail to provide that walking surfaces which are part of an accessible route have cross slopes no greater than 1:50. 1991 ADA § 4.3.7; 1968 Ref Std § 4.3.7.*

V.   The walking surface from the public sidewalk adjoining Russ & Daughters' back entrance to the entrance area has a cross slope greater than 1:48.
*Defendants fail to provide that walking surfaces which are part of an accessible route have cross slopes no greater than 1:48. 2010 ADA § 403.3; 2008 Ref Std § 403.3; and 2014/2022 Ref Std § 403.3.*

W.  The walking surface from the public sidewalk adjoining Russ & Daughters' back entrance to the entrance area has a running slope greater than 1:20 but does not comply with the minimum requirements for ramps.
*Defendants fail to provide that walking surfaces with a running slope greater than 1:20 that are part accessible route comply with the requirements for ramps. 1991 ADA § 4.3.7; and 1968 Ref Std § 4.3.7.*

X.   The walking surface from the public sidewalk adjoining Russ & Daughters' back entrance to the entrance area has a running slope greater than 1:20
*Defendants fail to provide that walking surfaces which are part of an accessible route have running slopes no greater than 1:20. 2010 ADA § 403.3; 2008 Ref Std § 403.3; and 2014/2022 Ref Std § 403.3.*

Y.   Russ & Daughters' back entrance is not accessible.
*Defendants fail to provide that at least 50% of the public entrances are accessible.  1991 ADA § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of the public entrances are accessible.  2010 ADA § 206.4.1.*
*Defendants fail to provide that primary entrances/public entrances are accessible. 1968 BC § 27-292.5(a).2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § BC 1105.1.*

Z.   There is no level and clear maneuvering clearance at the exterior side of the back entrance doorway as the ground surface within the area required for maneuvering clearance has slopes (cross and running) greater than 1:48.
*Defendants fail to provide a level and clear ground surface area at the pull side of the entrance door of 60 inches deep (perpendicular to the doorway) and 18 inches wide (beyond the latch side*

*of the door). 1991 ADA § 4.13.6 and Fig. 25; 2010 ADA § 404.2.4.1; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

AA.    The area required for maneuvering clearance at the exterior side of the back entrance doorway is not level.
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain any slope that exceeds 1:50. 1991 ADA § 4.3.7*
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain any slope that exceeds 1:48. 2010 ADA § 404.2.4.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3.5; and 2014/2022 Ref Std § 404.2.3.1*

BB.    The area required for maneuvering clearance at the exterior side of the back entrance doorway is not clear.
*Defendants fail to provide that the minimum required maneuvering clearance area does not contain obstructions or barriers.  1991 ADA § 4.13.6; 2010 ADA § 404.2.4.4; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3.5; and 2014/2022 Ref Std § 404.2.3.1.*

CC.    There is a change in level greater than ½ inch high between the walking surface at the exterior of the back entrance and the threshold of the back entrance.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp, elevator, or platform lift. 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. 2010 ADA § 303.4; 2008 Ref Std § 303.3; 2014 BC § 1003.5; and 2014/2022 Ref Std § 303.4.*

DD.    The route provided to navigate the change in level at the back entrance doorway has a running slope greater than 1:20, but does not comply with any of the requirements for ramps
*Defendants fail to provide a compliant ramp. to overcome the change in level at the entrance. 1991 ADA § 4.8; 2010 ADA § 405; 2008 BC §§ 1102 and 1104; 2014 BC §§ 1102, 1104; and 1003.5; and 2022 BC § 1104*

EE.The running slope of the ramp run is too steep (greater than 1:12).
*Defendants fail to provide that the ramp run does not have a running slope steeper than 1:12. 1991 ADA § 4.8.2; 2010 ADA § 405.2; 1968 Ref Std § 4.8.2; 2008 Ref Std § 405.2; and 2014/2022 Ref Std § 405.2.*

FF. The cross slope of the ramp run is not level (greater than 1:48).
*Defendants fail to provide that the ramp run does not have a cross slope greater than 1:48. 1991 ADA § 4.8.6; 2010 ADA § 405.3. 1968 Ref Std § 4.8.6; 2008 Ref Std § 405.3; and 2014/2022 Ref Std § 405.3.*

GG.    The ramp does not have a top landing.
*Defendants fail to provide that the ramp has a top landing that is level, with a minimum length of 60 inches and at least as wide as the run of a compliant ramp. 1991 ADA § 4.8.4; 2010 ADA § 405.7; 1968 Ref Std § 4.8.4; 2008 Ref. Std § 405.7; and 2014/2022 Ref Std § 405.7.*

HH.    There is no level and clear maneuvering clearance at the exterior side of the back entrance doorway as the run of the noncompliant ramp is located within this area (i.e., the ground surface has a slope greater than 1:12).

*Defendants fail to provide a level and clear ground surface area at the pull side of the entrance door of 60 inches deep (perpendicular to the doorway) and 18 inches wide (beyond the latch side of the door). 1991 ADA § 4.13.6 and Fig. 25; 2010 ADA § 404.2.4.1; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

II.   No signage identifies an accessible public entrance (if Defendants assert they provide an accessible public entrance).

*Defendants fail to display signage (marked with the International Symbol of Accessibility or otherwise) that identifies an accessible entrance. 1991 ADA §§ 4.1.2(7)(c); 4.1.3(8)(d); and 4.1.6(1)(h); 2010 ADA § 216.6; 1968 BC § 27- 292.18; 2008 BC § 1110; 2014 BC §§ 1101.3.4 and 1110; and 2022 BC §§ 1101.3.4 and 1111.1.*

JJ.   No directional signage at the inaccessible public entrance indicates the location of an accessible public entrance (to the extent Defendants claim they provide an accessible entrance).

*Defendants do not provide and display signage at the inaccessible public entrance (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible public entrance. 1991 ADA §§ 4.1.6(1)(h) and 4.1.3(8)(d); and 2010 ADA Standards § 216.6.*

*Defendants fail to provide directional signage at necessary locations. 1968 BC § 27-292.18(b). Defendants fail to provide directional signage by the inaccessible public entrance indicating the route to the nearest accessible public entrance. 2008 BC § 1110.2; 2014 BC §§ 1101.3.3; and 1110.2; and 2022 BC §§ 1101.3.3 and 1111.2*

KK.    The public entrance also functions as the public exit and is not accessible for the reasons described above.

*Defendants fail to provide that accessible spaces shall have not less than one accessible means of egress, or where more than one general means of egress is required from any accessible space, each accessible portion on the space shall be served by not less than two accessible means of egress. 2010 ADA § 207.1 (2000 IBC 1003.2.13); 2008 BC § 1007.1; 2014 BC § 1007.1; and 2022 BC § 1009*

*Defendants fail to provide that buildings shall have at least one primary entrance (exit) accessible to and usable by individuals who use wheelchairs and such entrance shall provide access to a level that makes elevators available in buildings where elevators are provided. 1968 BC § 27-357(d).*

### *Drinking & Dining*

LL. No accessible surfaces are provided for drinking and dining at the bar.

*Defendants fail to provide that at least 5% of the spaces for drinking and dining at the bar counter are accessible. 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 1109.11; and 2014 BC § 1109.10.*

*Defendants fail to provide that at least 10% of the spaces for drinking and dining at the bar counter are accessible. 2022 BC § 1108.2.9.1.*

MM.    The bar countertop is greater than 34 inches above the finished floor
*Defendants fail to provide that the top of accessible drinking and dining surfaces are 34 inches maximum above the finish floor. 1991 ADA § 4.32.4; 2010 ADA § 902.3; 1968 Ref Std § 4.30.4; 2008 Ref Std § § 902.3; 2014/2022 Ref Std § 902.4; and 2022 Ref Std § 902.4*

NN.    There is no 60 inch long portion of the bar counter with two accessible drining and dining surfaces.
*Defendants fail to provide at least one 60 inch long portion of the counter that is accessible. 1991 ADA § 5.2.*
*Defendants fail to provide at least one 60 inch long portion of the counter with two accessible seating spaces, that are not located within 40 inches of either end of the counter. 2022 NYC BC § 1108.2.9.2.*

OO.    There are no accessible surfaces for drinking and dining at the interior tables.
*Defendants fail to provide that at least 5% of the spaces for drinking and dining at tables are accessible. 1991 ADA § 5.1; 2010 ADA § 226.1 and 902; 1968 BC § 27-292.10(a)(3); 2008 1109.11; and 2014 BC § 1109.10.*
*Defendants fail to provide that at least 10% of the spaces for drinking and dining at the interior tables are accessible. 2022 BC § 1108.2.9.1.*

PP. Each interior table is without the minimum required clear floor space for wheelchairs of 30 inches wide by 48 inches deep extending under the table surface.
*Defendants fail to provide accessible dining surfaces at tables with the minimum required clear floor space for wheelchairs. 1991 ADA §§ 4.2.4 and 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014/2022 Ref Std § 902.2.*

QQ.    Each interior table has a pedestal base that impedes on the required clear space of 9 inches minimum above the finished floor at the underside the table.
*Defendants fail to provide accessible dining surfaces with the required minimum toe clearance. 1991 ADA § 4.32.2; 2010 ADA § 306.3; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014/2022 Ref Std § 902.2.*

RR.    Each interior table has a base that impedes on the required clear space of 27 inches minimum above the finished floor to the underside the table.
*Defendants fail to provide accessible dining surfaces with the required minimum knee clearance. 1991 ADA § 4.32.3; 2010 ADA § 306.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § § 902.2; and 2014/2022 Ref Std § 902.2.*

*Bathroom Facilities*

SS. There is no accessible bathroom (toilet room) at Russ & Daughters.
*Defendants fail to provide an accessible toilet room. 1991 ADA §§ 4.1.3(11) and 4.1.6(1)(a); 2010 ADA §§ 213 and 202.3; 1968 BC § 27-292.10(a)(1); 2008 BC § 1109.2; 2014 BC § 1109.2; and 2022 BC § 1109.2.*

TT. The bathroom entrance lacks the required level and clear maneuvering clearances.
*Defendants fail to provide an accessible door with level maneuvering clearances. 1991 ADA § 4.13.6; 2010 ADA § 404.2.4;1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

UU.   A vertical grab bar is not provided at the side wall adjacent to the water closet (toilet).
*Defendants fail to provide a vertical grab bar of 18 inches minimum in length mounted with the bottom of the bar located between 39 and 41 inches above the floor, with the center line of the bar located between 39 and 41 inches from the rear wall. 2008 Ref Std § 604.5.1; and 2014/2022 Ref Std § 604.5.1.*

VV.   The clear floor space required around the water closet (toilet) is not provided.
*Defendants fail to provide clear floor space around the water closet of 48 inches measured perpendicular from the side wall and 60 inches measured perpendicular from the rear wall. 1991 ADA § 4.16.2 and 1968 Ref Std § 4.16.2.*
*Defendants fail to provide clear floor space around the water closet of 60 inches measured perpendicular from the side wall and 56 inches measured perpendicular from the rear wall. 2010 ADA § 604.3; 2008 Ref Std § 604.3; and 2014/2022 Ref Std § 604.3.*

WW.   The minimum required clear floor space for wheelchairs in front of the lavatory is not provided, due to the bathroom layout.
*Defendants fail to provide a clear floor space of 30 inches by 48 inches in front of a lavatory, extending a maximum of 19 inches underneath the lavatory. 1991 ADA § 4.19.3; and 1968 Ref Std § 4.19.3.*
*Defendants fail to provide a clear floor space of 30 inches by 48 inches in front of a lavatory. 2010 ADA § 606.2; 2008 Ref Std § 606.2; and 2014/2022 Ref Std § 606.2.*

XX.   There is no accessible turning space in the bathroom
*Defendants fail to provide the minimum required turning space of 60 inches in diameter within the toilet rooms. 1991 ADA § 4.2.3; 2010 ADA § 304.3; 1968 Ref Std § 4.2.3; 2008 Ref Std § 304.3; and 2012 Ref Std § 304.3*

YY.   The baby changing table is located outside accessible reach ranges.
*Defendants fail to provide that the baby changing table is located within the accessible reach range.*

100.    A full inspection of Russ & Daughters will reveal the existence of other barriers to access.

101.    To properly remedy Defendants' unlawful discrimination and avoid piecemeal litigation, Plaintiff requires a full inspection of Russ & Daughters to catalogue the other architectural barriers at Russ & Daughters and have Defendants remediate them.

102.    Plaintiff gives notice that she intends to amend her Complaint to include any violations of the Accessibility Standards or Human Rights Laws that are discovered during an inspection of Russ & Daughters.

**FIRST CAUSE OF ACTION**
**(DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT)**

103.    Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

104.    Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. § 36.105(a) and (b).

105.    As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility and has restricted use of her arms and hands.

106.    "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

107.    The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of public accommodation, the lessee of space in a building for a place of public accommodation, and the owner or operator of the place of public accommodation. *See* 28 C.F.R. § 36.201(b).

108.    Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of Russ & Daughters, a place of public accommodation is liable to Plaintiff. See Id.

109.    None of the Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

110.    Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to access Russ & Daughters on the basis of disability.

111.    Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

112.    By failing to comply with the law in effect for decades, Defendants have articulated to Plaintiff, as a disabled person, that she is neither desired nor welcome as a patron of Russ & Daughters.

113.    Defendants performed design and construction work to build out Russ & Daughters but failed to perform the work so that their place of public accommodation, Russ & Daughters, complies with the 1991 ADA Standards or the 2010 ADA Standards.

114.    Because Russ & Daughters does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to her mobility disability. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

115.    Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff based on disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

116.    Defendants fail to provide an integrated and equal setting for the disabled at Russ & Daughters in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

117.    In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Defendants failed to make Russ & Daughters compliant with the ADA Standards to the maximum extent feasible when they performed work that constituted alterations to Russ & Daughters.

118.    Defendants failed to provide "readily accessible and usable" paths of travel to the

altered primary function areas of Russ & Daughters in violation of 28 C.F.R. § 36.403.

119.    Defendants failed to make all readily achievable accommodations and

modifications to remove barriers to access at Russ & Daughters in violation of 28 C.F.R. §

36.304.

120.    It has been and remains readily achievable for Defendants to make Russ &

Daughters accessible by complying with the ADA Standards.

121.    By failing to remove the barriers to access where it is readily achievable to do so,

Defendants have discriminated against Plaintiff on the basis of disability in violation of 42

U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

122.    Alternatively, To the extent Defendants allege that the removal of any of the

barriers to access was, and remains, not readily achievable, Defendants have violated the ADA

by failing to provide Plaintiff with reasonable alternatives to barrier removal. 28 C.F.R. § 36.305.

123.    Defendants' failure to remove the barriers to access constitutes a pattern and

practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R §

36.101 *et. seq.*

124.    Defendants continue to discriminate against Plaintiff in violation of the ADA by

maintaining a place of public accommodation that is not compliant with the ADA Standards, and

therefore not accessible.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF**
**THE NEW YORK HUMAN RIGHTS LAW**

125.    Plaintiff realleges and incorporates each allegation contained in the above

paragraphs as if fully set forth herein.

126.    Plaintiff suffers from various medical conditions that separately and together

prevent her from exercising the life activities of both walking and body motion range.

127.    Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

128.    In 2019, the New York State legislature enacted legislation which amended the construction provision of the State HRL, Executive Law § 300, to require that the protections and provisions be liberally construed. NY Session Law 2019, ch 160.

129.    The 2019 amendment requires the State HRL's provisions and the protections it provides to be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". Executive Law § 300.

130.    By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005, Local Law 85 of 2005, the New York State legislature confirmed the legislative intent to abolish parallel construction between the State HRL and related Federal anti-discrimination laws.

131.    Defendants have and continue to subject Plaintiff to disparate treatment by denying her equal opportunity to use their place of public accommodation all because she is disabled.

132.    Defendants discriminated against Plaintiff in violation of State HRL, Executive Law § 296(2), by creating or maintaining an inaccessible place of public accommodation.

133.    Each of the Defendants have aided and abetted others in committing disability discrimination.

134.    Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of State HRL, Executive Law §

296(2)(c)(iii).

135.    In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of State HRL, Executive Law § 296(2)(c)(v).

136.    It would be readily achievable (as defined by the State HRL) to make Defendants' place of public accommodation fully accessible.

137.    It would not impose an undue hardship or an undue burden on Defendants to make their place of public accommodation fully accessible.

138.    As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

139.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### DISCRIMINATION IN VIOLATION OF
### THE NEW YORK CITY HUMAN RIGHTS LAW

140.    Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

141.    Plaintiff suffers from medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

142.    Due to her impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

143.    The City HRL guarantees the right of all individuals, regardless of disability, to

equal opportunity (*i.e.*, equivalent access) to places of public accommodation.

144. "Equivalent access, in the words of the City HRL, is the opportunity to have "full and equal enjoyment, on equal terms and conditions" to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

145. Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they created and maintain a place of public accommodation, Russ & Daughters, which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

146. Defendants are also liable for the conduct of their employees and agents which resulted in the creation and maintenance of a place of public accommodation which is not accessible. N.Y.C. Admin. Code § 8-107(13).

147. Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of Russ & Daughters due to her disability.

148. Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create, and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

149. Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Russ & Daughters constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); See also N.Y.C. Admin. Code § 19-152 and § 7-210.

150. Defendants' failure to provide an accessible place of public accommodation and

consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

151.    Defendants discriminate against Plaintiff as they subject her to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

152.    Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of Russ & Daughters because of her disability.

153.    Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent" result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *See* N.Y.C Admin. Code § 8-107(17); and *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001).

154.    Defendants' failure to comply with the NYC Building Code as well as their failure to expend funds to upgrade and alter Russ & Daughters to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

155.    Because the result of Defendants' policies and practices is a place of public accommodation that is not accessible to people with mobility disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

156.    Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations necessary for persons with mobility disabilities that

27

use wheelchairs. N.Y.C. Admin. Code § 8-107(15)(a).

157.    Defendants' failure to make reasonable accommodations include their failure to remove the architectural barriers to access detailed herein so that individuals with mobility disabilities that use wheelchairs, including Plaintiff, have equal opportunity to enjoy what Defendants offer at Russ & Daughters.

158.    Defendants have known, or should have known, that members of the public, which includes current and prospective patrons of Russ & Daughters such as Plaintiff, have mobility disabilities that require the use of wheelchairs to ambulate.

159.    Defendants have known, or should have known, reasonable accommodations are necessary for persons with mobility disabilities that use wheelchairs to have the equal opportunity to enjoy what Defendants offer at their place of public accommodation, Russ & Daughters.

160.    To the extent Defendants were not obligated to have altered or maintained Russ & Daughters so that the architectural barriers identified in this Complaint do not exist it would not cause undue hardship in the conduct of their business to remove the architectural barriers detailed in this Complaint as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

161.    Defendants cannot demonstrate that it would cause undue hardship in the conduct of their respective businesses to remove the architectural barriers to access detailed herein as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

162.    Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of their failure to remove the barriers to access identified in herein, and Defendants' consequent denial of equal opportunity to Plaintiff, constitutes an ongoing

continuous pattern and practice of disability discrimination in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

### Section 8-130: The City HRL's Construction and Maximally Protective Role.

163.    To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

164.    The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85 § 7 and Local Law 35 § 2.

165.    The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

166.    The 2016 Amendments to the City HRL additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

167.    Due to the above-referenced amendments, the City HRL provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and the State HRL (Title 15 of the Executive Law) provide to persons in the same protected classes.

168.    Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law.

169.    Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

170.    Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

171.    Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

172.    Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

173.    The City HRL's stricter standards also apply in situations where the ADA and the State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C. Admin. Code § 8-130.

174.    Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

175.    In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

176.    Each of the Defendants have aided and abetted others in committing disability discrimination.

177.    Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

178.    Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

179.    Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

180.    As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, stress, and embarrassment.

181.    Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

182.     By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

183.     Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to the City HRL N.Y.C. Admin. Code § 8-502.

184.     By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies they should have used to provide an accessible space to themselves.

185.     By refusing to make their place of public accommodation accessible, Defendants have unlawfully benefited from their discriminatory conduct by collecting revenue from a non-compliant space.

186.     Defendants continue to take for themselves funds they are required to spend to remediate Russ & Daughters so that is is accessible.

187.     The amounts Defendants diverted to themselves, and the unlawful revenues they gained must be disgorged.

188.     Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CIVIL RIGHTS LAW)

189.     Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

190.     The CRL guarantees the rights of all persons in New York to "full and equal

accommodations, advantages, facilities and privileges of any places of public accommodation[]…subject only to the conditions and limitations established by law and applicable alike to all persons." N.Y. Civ. Rights Law § 40.

191.    The CRL therefore provides that public accommodations (i.e., covered entities), cannot "directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges" of their place of public accommodation. *Id.*

192.    The CRL also guarantees all persons in New York "equal protection of the laws of [New York and the City of New York] and specifically protects individual with disabilities from "any discrimination in her or his civil rights … by any other person or by any firm, corporation or institution". Id. at § 40-c.

193.    Those that discriminate against an individual with a disability are subject to a monetary penalty of $100 - $500 per offence, recoverable by the individual that suffered the discrimination pursuant to the CRL. *Id*. at § 40-d.

194.    Defendants discriminated against Plaintiff pursuant to the State HRL and the City HRL.

195.    Consequently, Plaintiff is entitled to recover the monetary penalty prescribed by CRL § 40-d for each discriminatory violation under the State HRL and the City HRL.

196.    As required by CRL § 40-d, notice of this action has been served upon the New York Attorney General.

## **INJUNCTIVE RELIEF**

197.    Plaintiff will continue to experience unlawful discrimination from Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief which Orders Defendants to alter and modify their place of public accommodation to comply with the

Accessibility Standards and the Human Rights Laws, is necessary.

198.    Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff as an individual with a disability that uses a wheelchair in accordance with the above-mentioned laws.

199.    Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA and the City HRL.

## JURY DEMAND

200.    Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA inclusive of its implementing regulations and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.  Issue a permanent injunction ordering Defendants to cease interior service at Russ & Daughters until Defendants cease there discriminating in violation of the ADA, State HRL, and City HRL by remediating all violations of the 2010 Standard and the NYC Standards at Russ & Daughters, including those set forth in this Complaint;

C.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and that Defendants will not repeat their unlawful practices, acts and omissions;

D.  Award Plaintiff compensatory damages from Defendants' violations of the City HRL;

E.  Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the City HRL;

F.   Award Plaintiff the monetary penalties for each act of discrimination in violation of the State HRL and City HRL, per defendant, pursuant to New York State Civil Rights Law § 40-d;

G.   Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA and City HRL; and

H.   For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: January 23, 2026
New York, New York

Respectfully submitted,

**HANSKI PARTNERS LLC**

By:/s/ Adam S. Hanski_____
Adam S. Hanski, Esq.
Attorneys for Plaintiff
4 International Dr, Ste 110
Rye Brook, NY 10573
Telephone: (212) 248-7400
Email: ash@disabilityrightsny.com